1        UNITED STATES DISTRICT COURT
                DISTRICT OF MINNESOTA
2

3    ------------------------------------------------------------
                                    )
     UNITED STATES OF AMERICA,      )   File No. 12-cr-104
4                                   )            (RHK/FLN)
              Plaintiff,            )
5                                   )
     vs.                            )   Saint Paul, Minnesota
6                                   )   June 6, 2012
     SAMUEL JAMES JOHNSON,          )   1:00 p.m.
7                                   )
              Defendant.            )
8    ------------------------------------------------------------

9
            BEFORE THE HONORABLE RICHARD H. KYLE
10             UNITED STATES DISTRICT COURT JUDGE
                  **(CHANGE OF PLEA HEARING)**

11
     APPEARANCES
12    For the Plaintiff:       UNITED STATES ATTORNEY
                               ANDREW R. WINTER, AUSA
13                             300 South Fourth Street
                               Suite 600
14                             Minneapolis, Minnesota 55415

15    For the Defendant:       OFFICE OF THE FEDERAL DEFENDER
                               DOUGLAS OLSON, ESQ.
16                             300 South Fourth Street
                               Suite 107
17                             Minneapolis, Minnesota
                               55415-1329
18
      Court Reporter:          CARLA R. BEBAULT, RMR, CRR, FCRR
19                             Suite 146 U.S. Courthouse
                               316 North Robert Street
20                             Saint Paul, Minnesota 55101

21

22

23
          Proceedings recorded by mechanical stenography;
24   transcript produced by computer.

25

# PROCEEDINGS

## IN OPEN COURT

THE COURT:  Okay.  We're here at this time on the matter of United States of America versus Samuel James Johnson, criminal file number 12-104.  Let's start with the appearances for the United States.

MR. WINTER:  Good afternoon, your Honor.  Andrew Winter appearing on behalf of the United States.

THE COURT:  Good afternoon, Mr. Winter.  For the Defendant.

MR. OLSON:  Doug Olson for Mr. Johnson.

THE COURT:  Good afternoon.  Mr. Johnson is also present.  Good afternoon to you, sir.

We're here, as I understand it, for a change of plea; is that correct?

MR. OLSON:  That's correct, your Honor.

THE COURT:  Madam clerk, if you would swear in the Defendant, please.

(Defendant sworn by the Clerk)

THE DEFENDANT:  Yes.

THE COURT:  Okay.  Mr. Johnson, you have now been placed under oath and as part of the proceedings here this afternoon you're going to be asked several questions.  It's important that you answer those questions truthfully.  If

1    you do not, should you lie about any serious or material

2    matter during the course of those proceedings, you would

3    subject yourself to a possible additional federal criminal

4    charge known as perjury.  Do you understand that?

5              THE DEFENDANT:  Yes, sir.

6              THE COURT:  And the reason that we're going to be

7    asking you any questions at all is I cannot accept a plea of

8    guilty from any Defendant until I'm satisfied that certain

9    conditions are in place, and make a determination whether

10   this is a case which is appropriate to proceed by a plea of

11   guilty.

12             Just as an example, I must be satisfied that your

13   decision to plead guilty here today is a knowing, voluntary,

14   conscious decision on your part that has been made without

15   any threats against you, without any promises other than

16   what might be set forth in the plea agreement.

17             I must be satisfied that you've had an opportunity

18   to consult with counsel, and you have consulted with counsel

19   and that you have had a chance to review the plea agreement

20   with him or have him review it with you.  That you have been

21   satisfied with his representation of you.

22             I also must be satisfied that you understand that

23   if you plead guilty and I accept that plea, one of the

24   consequences of that is going to be that not only you're not

25   going to be going to trial, but that you will be giving up

1       the various trial rights which would have been available to

2       you if you did go to trial.  They are important rights for

3       you and they are there for your protection.  I want to make

4       sure you understand what it is that you're leaving behind.

5              I also must be satisfied that you are guilty.  In

6       other words, we're going to ask you to tell us what you did

7       so that I can listen to your sworn testimony and make a

8       determination based on that testimony that a jury hearing

9       the same testimony could conclude beyond a reasonable doubt

10      you had committed the particular offense which will be the

11      subject of your plea agreement.

12             I also must be satisfied you understand that if I

13      accept your plea of guilty here today, which is what we all

14      think is going to happen, that's going to end this matter

15      with respect to whether you are guilty or not guilty.  It's

16      going to have the same legal effect as if you had gone to

17      trial and a jury had returned a verdict of not guilty.  One

18      of the consequences of that is you are not going to be able

19      to change your mind about the decision you're making here

20      today once I accept that plea of guilty.  Do you understand

21      that?

22             THE DEFENDANT:  Yes, sir.

23             THE COURT:  In other words, you're not going to be

24      able to leave here, rethink it and talk to perhaps another

25      friend, another lawyer, whoever you might want to talk to

1    about important decisions in your life, and then basically

2    call me up and say, Judge, I made a mistake back there on

3    June 6th.  I made a mistake.  I want to go to trial.  That

4    will not be an option available to you.

5            Now, as a result of that I want to make sure that

6    you understand that in the next few minutes as we go through

7    this if there's anything that you want to talk to your

8    lawyer about outside of my hearing, anything you want to ask

9    the prosecutor about, any questions you want to ask me

10   about, anything you want to ask me about the plea agreement,

11   you should have no hesitancy in letting me know that and

12   we'll stop and address whatever questions or concerns you

13   have.  But I have to rely upon you to let me know that you

14   have some questions or concerns or you want to talk to

15   somebody.  Do you understand that?

16            THE DEFENDANT:  Yes, sir.

17            THE COURT:  Are you willing to do that?

18            THE DEFENDANT:  Yes, sir.

19            THE COURT:  If you don't do it now, if you leave

20   here, you can't say I should have asked this question.

21   That's going to be too late also.  There are no dumb

22   questions.  There are no silly questions.  Anything that is

23   a concern to you that might affect your decision of whether

24   you want to proceed with this plea of guilty is fair game in

25   terms of you should be able to get an answer to it and we'll

1    try to do our best to address whatever concerns you may

2    have.

3             Mr. Winter, do you want to take the Defendant

4    through the plea agreement?

5             MR. WINTER:  Yes, your Honor.

6             THE COURT:  And I will come back -- and also the

7    factual basis, and I'll come back then to cover the waiver

8    of his rights.

9             MR. WINTER:  Good afternoon, Mr. Johnson.  Let's

10   go to the copy that's in front of you here which bears my

11   signature.  Is that your signature on page 6 as well?

12            THE DEFENDANT:  Yes, sir.

13            MR. WINTER:  Along with your attorney's?

14            THE COURT:  Counsel, can I just assume that the

15   document that you're now looking at, which apparently has

16   been signed, is the same document that I have been looking

17   at?

18            MR. WINTER:  Yes, it is.  It is entitled Plea

19   Agreement and Sentencing Stipulations, correct?

20            THE DEFENDANT:  Yes, sir.

21            MR. WINTER:  You've had a chance to review the

22   document?

23            THE DEFENDANT:  Yes.

24            MR. WINTER:  And by signing it, are you telling

25   the Court that you understand what's in it?

1              THE DEFENDANT:  Yes, sir.

2              MR. WINTER:  And this is how you would like to

3     dispose of the case?

4              THE DEFENDANT:  Yep.

5              MR. WINTER:  Okay.  We're just going to walk

6     through this.  You've read this first paragraph called

7     Factual Basis and you're prepared to make those admissions

8     today?

9              THE DEFENDANT:  Yes, sir.

10             MR. WINTER:  Paragraph 2 lays out that you're

11    pleading guilty to Count 3 of the Indictment.  As you know,

12    there are six counts in the Indictment but we've selected

13    Count 3 for purposes of this plea agreement, correct?

14             THE DEFENDANT:  Yes, sir.

15             MR. WINTER:  The other counts will be dismissed at

16    the time of sentencing, right?

17             THE DEFENDANT:  Yeah.

18             MR. WINTER:  The other sentence towards the end

19    here is that part of this agreement is that this District

20    will not seek charges against your wife Theresa White for

21    offenses arising out of this long investigation, correct?

22             THE DEFENDANT:  Yep.

23             MR. WINTER:  And you understand that that

24    agreement, however, does not bind other federal districts?

25    For instance, the District of Illinois could make their own

1       decision about charging her.  We're just agreeing not to

2       pursue her here in the District of Minnesota, correct?

3                     THE DEFENDANT:  Yep.

4                     MR. WINTER:  Paragraph 3 lays out statutory

5       penalties.  If you're not a career criminal it is a

6       potential of a maximum lifetime.  Otherwise it's a ten-year

7       statutory max, right?

8                     THE DEFENDANT:  Okay.

9                     MR. OLSON:  You have to say yes.

10                     THE DEFENDANT:  Oh, yes.

11                     MR. OLSON:  She has to take your answers down.

12                     THE DEFENDANT:  Okay.

13                     MR. WINTER:  If you're an armed career criminal,

14       there is a mandatory minimum sentence of 15 years, correct?

15                     THE COURT:  Yes.

16                     MR. WINTER:  There's a fine of up to $250,000?

17                     THE COURT:  What's the difference between A and B

18       here?

19                     MR. WINTER:  This is -- A addresses the maximum

20       term of imprisonment and B references the mandatory minimum

21       that's applicable if he's an armed career criminal.

22                     THE COURT:  If it's determined that he's an armed

23       career offender, he gets a term of imprisonment of life?

24                     MR. OLSON:  No, no.  Your Honor, if he's an armed

25       career criminal, the penalty is 15 years up to a maximum of

```
 1    life.

 2              THE COURT:  What does A say then?

 3              MR. WINTER:  If he's an armed career criminal, the

 4    maximum punishment then is life.

 5              THE COURT:  Otherwise it's 10 years?

 6              MR. WINTER:  Otherwise the maximum term for being

 7    a felon in possession is 10 years.

 8              THE COURT:  What's B say then?

 9              MR. WINTER:  And then B simply says if he's an

10    armed career criminal the mandatory minimum penalty is 15

11    years.

12              THE COURT:  Okay.  I think I understand it.

13              MR. WINTER:  Okay.

14              THE COURT:  If the parties do, I guess that's more

15    important.  It seems to me it's a little confusing.

16              MR. OLSON:  I think that A has to be read in

17    conjunction with the phrase "maximum punishment" and then it

18    makes some sense.

19              THE COURT:  Okay.

20              MR. WINTER:  C includes a fine of up to $250,000,

21    right?

22              THE DEFENDANT:  Yes.

23              MR. WINTER:  A potential supervised release term

24    of five years?

25              THE DEFENDANT:  Yes.
```

1          MR. WINTER:  There's going to be a mandatory

2    special assessment of $100?

3          THE DEFENDANT:  Yes.

4          MR. WINTER:  And then you may also be assessed

5    costs of prosecution, imprisonment and supervision.

6          THE DEFENDANT:  Yes.

7          MR. WINTER:  Paragraph 5 refers to the application

8    of the Sentencing Guidelines.  You understand that the

9    guidelines are no longer mandatory?

10          THE DEFENDANT:  Yeah.

11          MR. WINTER:  The guidelines, as this paragraph

12    lays out, are advisory.  And if the Court decides that the

13    guidelines should be applied in a fashion different than

14    your attorney and I believe, then the Court has that

15    discretion to do that.  Do you understand that?

16          THE DEFENDANT:  Yes.

17          MR. WINTER:  As we already said, however, in this

18    case there is very likely a mandatory minimum of 15 years in

19    play that isn't advisory; that's mandatory?

20          THE DEFENDANT:  Right, yes.

21          MR. WINTER:  Paragraph 6 refers to the base

22    offense level, and the Government's position is that you're

23    an armed career criminal pursuant to that statute reference.

24    And if you're an armed career criminal, that automatically

25    makes your base offense level of 33, right?

1              THE DEFENDANT:  Yes.

2              MR. WINTER:  If you're not subject to the armed

3      career criminal provision, we have an agreement that the

4      base offense level is going to be 24, right?

5              THE DEFENDANT:  Yes.

6              MR. WINTER:  And that's based on your criminal

7      history and the number of firearms involved in the

8      investigation, right?

9              THE DEFENDANT:  Yes.

10             MR. WINTER:  And that's laid out in paragraph 7.

11     There were more than three firearms involved and therefore

12     if you're an armed career offender, that enhancement

13     matters.  If you are a career offender, that trumps

14     paragraph 7.

15             THE DEFENDANT:  Yes.

16             THE COURT:  To be an armed career offender he has

17     to have two predicate felony offense?

18             MR. WINTER:  Three.

19             THE COURT:  Three.

20             MR. WINTER:  Regardless of what we've already

21     talked about, there's adjustments in the guidelines and it's

22     our belief that none of the adjustments would apply to your

23     case, correct?

24             THE DEFENDANT:  Yes.

25             MR. WINTER:  Paragraph 9 is very important:

1    Acceptance of Responsibility.  There are a few things that

2    you are required to do in order to earn that three-level

3    reduction.  One is to testify truthfully today.  Two is

4    cooperate with probation as they prepare the presentence

5    investigation.  And three is that you commit no acts

6    inconsistent with acceptance of responsibility, which is a

7    long way of saying keep your nose clean between now and

8    sentencing, right?

9            THE DEFENDANT:  Yes, sir.

10            MR. WINTER:  Paragraph 10 refers to criminal

11   history.  We believe that you're Criminal History Category

12   VI, which is the highest.  You're reserving your right to

13   address the Court as to criminal history and make whatever

14   arguments you feel are appropriate regarding criminal

15   history, but ultimately the Judge will decide what your

16   criminal history is.  And if it's different than your side

17   or my side believes, it does not give either of us a right

18   to pull out of the plea agreement, right?

19            THE DEFENDANT:  Yes, sir.

20            THE COURT:  He becomes an armed career offender, I

21   take it, by having three priors?

22            MR. WINTER:  Three.

23            THE COURT:  What would he be if he -- what is his

24   count?  Would he be in a Category VI, in any event?

25            MR. WINTER:  I believe he would be a Category VI.

1           THE COURT:  So this doesn't really alter anything?

2           MR. WINTER:  It doesn't alter -- I don't think it

3    would alter the guidelines, that axis of the guidelines.

4           THE COURT:  Okay.

5           MR. WINTER:  Guideline range -- I'm sorry.  We do

6    address it in the next paragraph, your Honor, and we've come

7    up with a Category V, I'm sorry.  If he's not career

8    offender he is Category V, not VI.  And we'll cover that in

9    the next paragraph of the plea agreement under Guideline

10   Range.

11          THE COURT:  Where does it say he's V?

12          MR. WINTER:  Paragraph number 11 on page 5, your

13   Honor.

14          THE COURT:  Oh, I see.  Thank you.

15          MR. WINTER:  So if you're armed career criminal,

16   you're VI.  If not, we think you're a V.  Again, if you're a

17   VI, your guideline range is 168 to 210 months.  But of

18   course it's really 180 to 210 months because of the 15-year

19   mandatory minimum, correct?

20          THE DEFENDANT:  Yes, sir.

21          MR. WINTER:  Okay.  If you're not career offender,

22   we think your adjusted offense level is 23, and a Category

23   V, with a resulting range of 84 to 105 months, right?

24          THE DEFENDANT:  Yes, sir.

25          MR. WINTER:  Okay.  Fine range covers both those

1    scenarios.  The high end is 15,000 to 150,000.  The lower

2    scenario is 10,000 to 100,000.  Right?

3              THE DEFENDANT:  Yes, sir.

4              MR. WINTER:  We've already talked about the $100

5    special assessment.  We've talked about the fact that there

6    is going to be supervised release as part of your sentence.

7    Do you have any questions about that?

8              THE DEFENDANT:  No, sir.

9              MR. WINTER:  And then the last paragraph refers to

10   forfeiture of the firearms, ammunition that were involved in

11   the investigation, and you're agreeing to forfeit that to

12   the United States.  You're not going to make any claims that

13   any of those guns or ammunition is something that you should

14   be able to keep after this case is done, correct?

15             THE DEFENDANT:  Yes, sir.

16             MR. WINTER:  Okay.  That is all I have on the plea

17   agreement, your Honor.  Should I move on to the factual

18   basis?

19             THE COURT:  Please.

20             MR. WINTER:  So we're going to go back now,

21   Mr. Johnson, to paragraph 1 which is the factual basis.  Is

22   it true then that on November 4th of 2010 while you were

23   within the State and District of Minnesota, with and having

24   a criminal history that prevents you from possessing a

25   firearm, did you in fact possess the firearm that's

1    identified which is a Romanian GP WASR-10 7.62 39 caliber

2    semiautomatic rifle?

3              THE DEFENDANT:  Yes, sir.

4              MR. WINTER:  We've also identified the serial

5    number.  I don't expect you to have that memorized but do

6    you have any reason to doubt that the serial number reflects

7    the number that was on the rifle that you possessed on that

8    day?

9              THE DEFENDANT:  No, sir.

10             MR. WINTER:  And you possessed that firearm

11   knowing that it was illegal to do so; is that correct?

12             THE DEFENDANT:  Yes, sir.

13             MR. WINTER:  Did anyone force you to possess the

14   firearm or coerce you to possess a firearm in any fashion or

15   did you do it of your own free will?

16             THE DEFENDANT:  I did it of my own free will.

17             MR. WINTER:  So you have no qualms with the fact

18   that you are in fact guilty of Count 3 in the Indictment?

19             THE DEFENDANT:  Yes, sir.

20             MR. WINTER:  That's what I have on the factual

21   basis, your Honor.

22             THE COURT:  Okay.  Then I guess that's all we need

23   from you.  Do we have a -- it seems to me I saw his rap

24   sheet earlier, prior record.

25             MR. WINTER:  I have a copy of the Indictment.

1          THE COURT:  No, I'm just thinking of these

2     prior -- not the ones that are -- you have offenses other

3     than what's in the Indictment, unless I'm confusing this

4     with the other.

5          THE CLERK:  That's the bond report.

6          THE COURT:  The bond report.

7          MR. WINTER:  I have one, your Honor.

8          THE COURT:  Can I just take a look at that for a

9     moment?  Are you through then with what you want to cover?

10          MR. WINTER:  I will just ask one more question

11     about the criminal history.  Because there's an issue as to

12     whether or not you're an armed career criminal, that's one

13     issue, but you're not disputing that you have at least one

14     felony conviction that prohibits you from possessing a

15     firearm?

16          THE DEFENDANT:  Right.

17          MR. WINTER:  Okay.

18          THE COURT:  Okay.  Mr. Johnson, as you now know,

19     the plea agreement which you have signed basically covers

20     two -- there's two basic purposes.  It sets forth what we

21     call the factual basis.  That is you agree what you did here

22     that constitutes the offense and then it deals with

23     sentencing options available to the Court.  Mr. Winters has

24     just gone through the factual basis with you and I gather

25     you've read the plea agreement.  Is that correct?

1          THE DEFENDANT:  Yes, sir.

2          THE COURT:  You read this carefully?

3          THE DEFENDANT:  Yes, sir.

4          THE COURT:  You read it more than once?

5          THE DEFENDANT:  Yes, sir.

6          THE COURT:  Talked with your lawyer about it?

7          THE DEFENDANT:  Yes, sir.

8          THE COURT:  Asked him questions about it?

9          THE DEFENDANT:  Yes, sir.

10          THE COURT:  Was he able to answer those questions

11   as far as you could tell?

12          THE DEFENDANT:  Yes, sir.

13          THE COURT:  Have you been satisfied with his

14   representation of you?

15          THE DEFENDANT:  Yes, sir.

16          THE COURT:  As you stand here right now, are there

17   some questions that come to mind that you would like to talk

18   to him about that you have not talked to him about before?

19   Anything that you would like to go to the sidebar and talk

20   with him about?

21          THE DEFENDANT:  No.

22          THE COURT:  You're hesitating and I'm not trying

23   to produce questions from you, but if there are any, this is

24   the time to raise them.  You can't raise them an hour from

25   now with somebody else.  Anything you would like to talk

```
 1    about, just let me know and we'll let you do it.
 2              THE DEFENDANT:  No, that's fine.
 3              THE COURT:  Okay.  Now, the -- and no one has made
 4    any promises to you other than what's in the plea agreement
 5    itself?
 6              THE DEFENDANT:  No, sir.
 7              THE COURT:  Anybody make any physical threats to
 8    get you to plead guilty here today?
 9              THE DEFENDANT:  No, sir.
10              THE COURT:  I know you have been in custody now
11    but in the last three or four days, have you had any
12    alcohol, drugs, prescriptive medications?
13              THE DEFENDANT:  No, sir.
14              THE COURT:  Any history of any type of mental
15    issues at all?
16              THE DEFENDANT:  Yeah.
17              THE COURT:  Yes?
18              THE DEFENDANT:  Yes.
19              THE COURT:  What type?
20              THE DEFENDANT:  Bipolar Type II, severe
21    depression, and PTSD.
22              THE COURT:  Are you taking any medications for
23    those?
24              THE DEFENDANT:  No, sir.
25              THE COURT:  Have you at one time?
```

1          THE DEFENDANT:  Yeah, I have, yeah.

2          THE COURT:  As far as you know, do those

3     disorders, for lack of a better term, affect your ability to

4     talk with your lawyer, ask him questions, listen to his

5     answers and understand those answers?

6          THE DEFENDANT:  No, sir.

7          THE COURT:  You seem to be alert here today.  Any

8     reason that you can tell me that I should be concerned about

9     your ability to understand what's in this plea agreement and

10    your ability to cooperate with your lawyer?

11         THE DEFENDANT:  No, sir.

12         THE COURT:  Okay.  Now, if you -- if I accept your

13    plea of guilty -- which, as I say, we're sure that's what's

14    going to happen here this afternoon -- that means you're not

15    going to be going to trial.  And one of the consequences of

16    that, as I indicated earlier, there are various trial

17    rights, what we call trial rights that are available to you

18    as a Defendant if you did go to trial.  They are important

19    rights and they are going to disappear if I accept that plea

20    of guilty.  So I want to make sure that you understand what

21    it is that you're giving up by way of those rights.

22         First, you're entitled to a trial by jury if you

23    went to trial.  That would be 12 individuals that would be

24    selected to hear the evidence in the case.  The Government

25    would be required to prove your guilt beyond a reasonable

1      doubt, which is a very high standard of proof.  They have to

2      convince all 12 jurors that you were guilty before a

3      conviction could be returned, which means a single juror not

4      believing you were guilty or not believing that the

5      Government had met that burden would prevent a conviction.

6      Do you understand that?

7              THE DEFENDANT:  Yes, sir.

8              THE COURT:  If you went to trial you would have a

9      right through your lawyer to examine and cross-examine all

10     the witnesses.

11             You also would have the right to force a witness

12     to come in here and testify for you even though that witness

13     did not want to do it.  In other words, you might have a

14     friend out there, someone you thought was a friend, and when

15     you contacted him or your lawyer said we need you in here to

16     give some testimony on a particular topic, he said I would

17     love to go in there, he is an old friend of mine, but I'm

18     not going to go anywhere near a federal courthouse.  And

19     that's not an unusual response from people who are asked to

20     testify in a federal case.

21             If that were the case, your lawyer would come to

22     me and I expect explain those circumstances and tell me how

23     important the testimony was and he couldn't get the witness

24     in, and I would authorize the issuance of a subpoena, which

25     is basically a written document which would be given to a

1     Deputy U.S. Marshal.  And that document gives the Deputy

2     Marshal the authority to go and locate that person and

3     basically bring that person in even though that person

4     didn't want to come in so that testimony would become

5     available.

6           That would also cover what we call physical

7     evidence.  There might be some documents out there or

8     something like that that you thought would be helpful.  And

9     if the witness did not want to bring those to court and turn

10    those over, that would give the marshal the authority to

11    secure those documents so they would also become available

12    to you during the course of the trial.

13          If you went to trial you would have the right to

14    testify.  In other words, you could take the witness stand

15    and tell the jurors exactly what had happened here.  If you

16    did that, you would be subject to cross-examination by the

17    United States Attorney's Office.  And, of course, you would

18    be sworn, put under oath and sworn to tell the truth.  And

19    you do have an absolute right to testify.

20          You have a corresponding right just as absolute

21    not to testify.  In other words, no one can force you as a

22    Defendant or any Defendant to be a witness.  If you chose to

23    just remain silent, sit at counsel table, the Government

24    could not comment on it.  They couldn't suggest to the jury

25    directly or indirectly, Well, members of the jury, you heard

1    that Mr. Johnson entered a plea of not guilty here.  Why

2    isn't he up here on the witness stand telling us why he is

3    not guilty?  That would not be appropriate conduct and it

4    would not occur and the Court would make sure it did not

5    occur, but you do have an absolute right to remain silent.

6            If you -- I guess maybe that's all we need to

7    cover on that.  Do you have any questions about any of those

8    rights?

9            THE DEFENDANT:  No, sir.

10           THE COURT:  You realize you're giving them up?

11           THE DEFENDANT:  Yes, sir.

12           THE COURT:  You realize once they are given up,

13   they are gone and they are gone forever.  You can't change

14   your mind about it?

15           THE DEFENDANT:  Yes, sir.

16           THE COURT:  Now, some rights you have which you

17   are not giving up, I just want to make sure you understand

18   what those are.  First, you're presumed innocent at the

19   present time.  If you went to trial that presumption of

20   innocence would be with you and it would be a sufficient

21   basis in and of itself for a jury to return a verdict of not

22   guilty.

23           You're also entitled to be represented by a lawyer

24   at all times.  If your current lawyer could not stay with

25   you, could not continue to represent you and you went to

1    trial any other time and you could not afford another lawyer

2    with your own money, the Court could appoint another lawyer

3    to represent you.  You have an absolute right to be

4    represented at all times by another lawyer.

5              So those are the rights which you have.  Those are

6    the rights which you do not give up.

7              Mr. Olson, you have represented the Defendant from

8    the outset in this matter?

9              MR. OLSON:  Yes, your Honor.

10             THE COURT:  And based upon that representation and

11   your dealings with him, talking with him, are you satisfied

12   that his decision to proceed with a plea of guilty here

13   today is a knowing, voluntary, conscious decision on his

14   part?

15             MR. OLSON:  Yes, your Honor.

16             THE COURT:  Are you aware of any reason I should

17   not accept this plea agreement?

18             MR. OLSON:  No.

19             THE COURT:  Mr. Winter, from the standpoint of the

20   United States, are you satisfied that you or your office has

21   available to it sufficient admissible evidence to sustain a

22   conviction to the charges in count -- what is the count he

23   is going to plead guilty to?

24             MR. WINTER:  Count 3.

25             THE COURT:  Count 3 of the indictment?

1          MR. WINTER:  Yes, your Honor.

2          THE COURT:  Are you aware of any reason I should

3     not accept this plea agreement?

4          MR. WINTER:  No, your Honor.

5          THE COURT:  Let me go back to you, Mr. Johnson.  I

6     notice you've had more than a few prior run-ins with the law

7     and been in court and received sentences.  I just want to

8     make sure you understand in federal court when you are

9     sentenced here, if this proceeds and you are sentenced to

10    one of these terms of imprisonment, you will serve that

11    entire sentence with the possible exception of a 15 percent

12    reduction from whatever that sentence is if you comply with

13    all the rules and regulations of the prison sentence.  In

14    other words, there's no early release in the federal system

15    anymore.

16          And I bring it up because individuals who have

17    prior dealings with state court systems and olden days in

18    the federal system, there was early release.  You would get

19    sentenced to early release and you would be out on parole or

20    something like that.  And I think it comes as a surprise

21    sometimes to Defendants who have been under that system and

22    then now come to federal court and are surprised to find

23    that these sentences are more determinant.  Do you

24    understand that?

25          THE DEFENDANT:  Yes, sir.

1          THE COURT:  You would have the right to appeal.

2     There is no waiver of appeal here, is there?

3          MR. WINTER:  No, your Honor.

4          THE COURT:  One of the rights you are not giving

5     up, you, as the Defendant, have the right to appeal the

6     sentence in this case if you are dissatisfied with it.  In

7     other words, if I impose a sentence that you think is too

8     high, you have a right to challenge it and file a Notice of

9     Appeal and take that decision to the Eighth Circuit Court of

10    Appeals, which is a federal court which reviews decisions of

11    trial courts such as this.  But if you're dissatisfied with

12    the sentence, your only recourse will be to appeal the

13    sentence.

14          In other words, you can't be dissatisfied with the

15    sentence I just imposed and then say, Well, as a result of

16    that, if I had known that I was going to get that high of a

17    sentence, I want to withdraw my plea of guilty.  Once I

18    accept your plea of guilty, the only way you will be able to

19    challenge the sentence in this case is by taking an appeal,

20    not by changing your mind about the plea.  Are you satisfied

21    with that?

22          THE DEFENDANT:  Yes.

23          THE COURT:  Now, any questions you have about

24    anything that's going on?  I'm about to ask you whether

25    you're prepared to enter a plea in this case.  Before I do,

1    let me just ask you one more time, do you have any questions

2    you would like to talk to your lawyer about, any questions

3    of me, any questions of the prosecutor?

4            THE DEFENDANT:  No, sir.

5            THE COURT:  Are you prepared to proceed then with

6    the plea?

7            THE DEFENDANT:  Yes, sir.

8            THE COURT:  Count 3 of the Indictment in this

9    matter charges you with possession of a firearm having

10   previously been convicted of felonies in violation of

11   federal law, specifically Title 18, United States Code,

12   Sections 922(g), 924(a)(2) and 924(e).  Are you prepared to

13   enter a plea to that particular charge?

14           THE DEFENDANT:  Yes, sir.

15           THE COURT:  And what is that plea, guilty or not

16   guilty?

17           THE DEFENDANT:  Guilty.

18           THE COURT:  The Defendant's plea of guilty to the

19   charges in Count 3 of the Indictment is accepted.  The Court

20   directs the preparation of a Presentence Investigation

21   Report.  That report is basically a report about you.  It

22   will give me information that will help me decide when we

23   return here for sentencing what your sentence should be.  It

24   will contain all kinds of information about your upbringing,

25   your family, your education, employment history, financial

1    condition.  I'll get a rundown on your prior criminal

2    record.

3           Before I see that report a copy will go to your

4    lawyer, a copy will go to the Government lawyer, and they

5    will have a chance to talk with the person who wrote that

6    report up.  And if they have any disagreements or objections

7    to any part of that report, they will try to have the report

8    changed by a conversation with the author of that report.

9    If they are successful, the report will be put in final form

10   and sent to me.

11          If they are not successful in getting it changed,

12   the Government or your lawyer, the report will not be

13   changed.  It will be sent to me but I will be told when I

14   get it there are various areas of disagreement or various

15   objections which have not been resolved.  And to the extent

16   those areas of disagreement or those objections might affect

17   the sentence in this case depending on how they are

18   resolved, I will obviously have to decide who is right and

19   who is wrong about that before you are sentenced.

20          That will probably take a couple of months to

21   complete.  When it has been completed we will return here, I

22   suspect, to this courtroom for imposition of sentence.  You

23   will be represented again by Mr. Olson.  He will speak for

24   you before sentence is imposed.  You will be given a chance

25   to speak if you wish to do so but that's optional on your

1    part.  I will also get the views of the United States from

2    Mr. Winter or someone from his office.

3             I think that's all we need.  The Defendant is in

4    custody at the present time.  He will remain in custody.

5             Is there anything else we need to cover,

6    Mr. Olson?

7             MR. OLSON:  No, your Honor.

8             THE COURT:  Mr. Winter?

9             MR. WINTER:  No, your Honor.

10            THE COURT:  Do we have a copy of the plea

11   agreement?

12            MR. WINTER:  Yes.

13            THE COURT:  Let's get that filed.  Okay.  Then we

14   are in recess.

15            (Court adjourned at 1:27 p.m.)

16                        *     *     *

17

18

19            I, Carla R. Bebault, certify that the foregoing is

20   a correct transcript from the record of proceedings in the

21   above-entitled matter.

22

23

24            Certified by:  s/Carla R. Bebault
                             Carla Bebault, RMR, CRR, FCRR
25